| 64 | 469 |
| 79 | 302 |
| 64 | 469 |
| 135 | ²629 |

## ANDREW HINES v. THE ESTATE OF PHŒBE JENKINS, DECEASED.

*Deed—Action on covenant of warranty—Judgment in ejectment as evidence—Notice to warrantor.*

1. A judgment in ejectment, and eviction thereunder, are not *prima facie* evidence of the breach of the covenants of warranty in a deed under which the defendant claims title, in the absence of proof of notice *in writing* to the covenantor to defend said ejectment suit; and a contrary doctrine was not laid down in *Mason v. Kellogg,* 38 Mich. 139.

2. A judgment in ejectment is not binding on the defendant's warrantor without adequate notice to defend, which must be in writing, as held in *Mason v. Kellogg,* 38 Mich. 139.

Error to Livingston. (Newton, J.) Argued January 7, 1887. Decided January 20, 1887.

[1]For statement of facts, see head-note 4.

Appeal from the allowance of a claim for breach of warranty in deed against the grantor's estate. Judgment of circuit court reversed. The facts are stated in the opinion.

*D. Shields* and *L. S. Montague,* for estate.

*J. L. Topping,* for claimant.

CAMPBELL, C. J. Plaintiff recovered in the circuit court for Livingston county, on a claim against the estate of Phœbe Jenkins, for breach of a covenant of warranty contained in a deed of certain lands in that county, made to him by Mrs. Jenkins in May, 1875. Having proved his eviction under writs of possession dated February 25, 1885, under judgments in ejectment rendered in favor of Emma Austin and Gideon S. Ramsdell, in February, 1883, and October, 1884, plaintiff rested, without proof of notice to Mrs. Jenkins, and was allowed to recover his damages.

Evidence was received, under objection, from Rollin H. Person, who was attorney in the case of Mrs. Austin, where there was a special finding, that in the previous trial of the Ramsdell case, in which he took no part, he was present, and thought the testimony was the same, in substance at least.

Defendant showed a tax deed from the State to Frederick J. Lee, dated March 1, 1873, duly recorded, and a conveyance thereafter from Lee to Mrs. Jenkins, of the same date with her deed to Hines. Nothing was shown to controvert the validity of this deed.

The court below, nevertheless, took the case away from the jury, and ordered a verdict for the plaintiff. This seems to have been done under the assumption that it was decided in *Mason v. Kellogg,* 38 Mich. 139, that eviction under a judgment in ejectment was presumptive evidence of a breach of the covenant, and of better title than the one conveyed.

The judgment below cannot be maintained even on that

basis, because the finding of facts on which the ejectment judgment in Mrs. Austin's case was based does not identify this tax deed at all. It refers to an earlier conveyance to Mrs. Jenkins of a tax title, which the court found to have been invalid by reason of certain facts *in pais*, not appearing in any of the tax records; but it does not refer to the title obtained under this deed, which is presumptively valid.

But we are not prepared to say that the case of *Mason v. Kellogg* sustains any such doctrine as was held below. In that case the opinion does not so decide. It was decided that the ejectment judgment was not binding on the warrantor without adequate notice to defend. It was further decided that if the judgment was *prima facie* evidence of the superiority of the title of plaintiff in ejectment, who claimed against an administrator's deed, that presumption was no better than the one raised by law in its favor, and could not overcome it. But, in speaking of this *prima facie* effect claimed for the judgment, it was distinctly said: "We do not say it is proof to that extent." The majority of the Court, concurring in giving judgment against the plaintiff, did not decide that the judgment was evidence of anything beyond the fact of eviction; and some very strong reasons were given by the judge who delivered the opinion in that direction.

It is very manifest that to allow a judgment to which Mrs. Jenkins was not privy to stand as proof, complete or presumptive, of her breach of covenant, is to give such a judgment greater force than any other judgment which is *res inter alios*, and practically to throw on the defendant the burden of proof, instead of leaving it where it belongs, on the plaintiff. It was shown in *Mason v. Kellogg* that a judgment in ejectment could never in itself prove anything more than that the plaintiff in it had a better title than defendant, and that it was no proof that that title did not emanate from the defendant, or from some source which would not impugn

the grant containing the warranty, which might have been perfectly good at its date. Only one of these ejectment judgments is based on a special finding. That finding may, perhaps, show that the plaintiff in ejectment prevailed against the title derived from Mrs. Jenkins. In reciting the defects in her title, they all appear to have been made out by parol evidence of matters which are not, even in the finding, shown to have been within her knowledge. Without notice to defend the ejectment suits, she was not in a position to inquire into the character or legal admissibility of that proof, or to obtain the judgment of an appellate court whether the finding itself was such as to support the judgment, or would have been sustained on a proper bill of exceptions.

This finding itself shows a good presumptive title in Mrs. Jenkins; and in *Mason v. Kellogg*, 38 Mich. 139, it was held that the fact that the title shown in the ejectment suit was presumptively good overthrew all the presumptions against it, so far as the warrantor was concerned, which arose from the judgment in ejectment. To hold that Mrs. Jenkins was bound by the conclusion of the court, from the evidence introduced there to overthrow this presumption, would be to hold her bound by proceedings where she was not heard, and by testimony which she, even after the finding, had no means of identifying or meeting.

It seems to us that the learned circuit judge, who appears to have held in the first instance that plaintiff, in the absence of notice to defend, was bound to prove a failure of title, was misled by the citation of *Mason v. Kellogg* on the trial, and decided as he did on a misapprehension of what was really settled by it. To allow a judgment between strangers to prove any more, whether presumptively or absolutely, than what was alleged and determined as between them, would, we think, be very unjust and dangerous, by shifting the burden of proof in one case according to something done in another, in which the party had no power to intervene. The whole

defense would consist in overthrowing a presumption created by proofs of which defendant was ignorant, and which, if she had been present, might have been excluded or destroyed. There is no justice in such a doctrine, and, whatever *dicta* may be found in its favor, it is not only contrary to the whole doctrine concerning judgments in all other cases, but contrary to decisions which are worthy of great respect. See Rawle, Cov. (4th ed.) 227–253, and notes.

In the present case, as already pointed out, the tax deed set up in defense does not appear to be the same set forth in the finding, and could not be affected by it on any theory whatever. The finding also sets out facts which raised a presumption of good title in Mrs. Jenkins, such as was held in *Mason v. Kellogg* to overcome any presumption which could arise from the judgment itself, although it was, as between the parties in ejectment, overthrown by the judgment.

It may further be remarked that, instead of seeking a new trial, or notifying Mrs. Jenkins or her estate so as to give an opportunity for claiming one under the statute, this eviction was allowed under a first judgment, which Mrs. Jenkins could not come in and have set aside without the permission or requirement of Hines, who saw fit to allow himself to be put out without giving any chance to his grantor to try the facts except on his suit upon the covenant. This exemplifies the importance of holding a grantee to give notice to his grantor if he desires to have the ejectment judgment binding in an action on the covenant.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.